AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**NORTHERN** DISTRICT OF **CALIFORNIA**

FILED
AUG 17 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

V.

CHARLES A. PHILLIPS

**CRIMINAL COMPLAINT**

CASE NUMBER: 4-07-70488 WDB

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___May 2, 2007___ in ___Contra Costa___ county, in the ___Northern___ District of ___California___ defendant(s) did, (Track Statutory Language of Offense)

See Attachment

in violation of Title ___21___ United States Code, Section(s) ___841(a)(1), 856___

I further state that I am a(n) ___FBI Special Agent___ and that this complaint is based on the following

Official Title

facts:

See attached Affidavit of FBI Special Agent Nitiana Doss

NO BAIL ARREST WARRANT REQUESTED.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved As To Form: _____ 8/16/07
AUSA: GEORGE L. BEVAN JR.

_____
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

8/17/07
Date

at **San Francisco, California**
City and State

JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# ORIGINAL

## ATTACHMENT

COUNT ONE: 21 U.S.C. § 841(a)(1)

On or about May 2, 2007, in the Northern District of California, the defendant

**CHARLES A. PHILLIPS**

did knowingly and intentionally possess a Schedule II controlled substance, to wit, approximately 423.2 grams of a substance and mixture containing methamphetamine (162.5 grams of actual methamphetamine), with the intent to distribute it, and did distribute it, in violation of 21 U.S.C. § 841(a)(1).

MAXIMUM PENALTIES: Life imprisonment, with a mandatory minimum of 10 years; a fine of $4 million, at least 5 years supervised release, and a special assessment of $100. 21 U.S.C. § 841(b)(1)(A)(viii)

COUNT TWO: 21 U.S.C. § 856(a)(1)

On or about May 2, 2007, in the Northern District of California, the defendant

**CHARLES A. PHILLIPS**

did knowingly use the place located at 1477 Madeline Drive, San Pablo, California, for the distribution of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 856(a)(1).

1

<u>MAXIMUM PENALTIES</u>: 20 years imprisonment, a fine of $500,000, 5 years supervised release, and a special assessment of $100.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nitiana Doss, hereby declare and state the following:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since August 2005. I am assigned to the Violent Crimes and Major Offender Squad at the Oakland Resident Agency, San Francisco Field Office. My current assignments involve investigations of narcotics offenders and gang-related crimes. Relevant to this affidavit, my experience includes conducting surveillance, participating in undercover narcotics transactions, executing search warrants, assisting in arrests, and utilizing confidential sources. As a federal agent, I am authorized to investigate violations of laws of the United States, and execute warrants issued under the authority of the United States.

2. This affidavit is in support of the issuance of a criminal complaint charging **Charles A. Phillips** ("Phillips") with possession of methamphetamine for distribution and distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1); and using the premises located at 1477 Madeline Drive, San Pablo, California, for the distribution of methamphetamine in violation of 21 U.S.C. § 856(a)(1).

3. On May 2, 2007, at my direction, a confidential source (hereinafter "CS") purchased approximately one pound of methamphetamine (substance and mixture) from Phillips inside the Madeline Drive house. This purchase of methamphetamine was recorded via audiotape and videotape. I have reviewed the audio and videotapes. During

1

the transaction, Phillips handed to the CS a ziploc bag containing the methamphetamine, and the CS tendered cash in the amount of $10,000 to Phillips. This exchange was captured on the recordings.

4(a). This CS purchase of methamphetamine from Phillips was arranged as follows: On the day of the transaction, a recorded telephone call was placed from the CS's cellular phone to cellular telephone number 510-776-2990 used by Phillips. I have reviewed the recording of this telephone call. During this call, the CS told Phillips that the CS was ready. Phillips asked the CS to call him when the CS was close (referring to being close to the location of the transaction). The CS told me that he/she understood Phillips to mean that the CS should call him when the CS was close to the premises on Madeline Drive because the CS has previously purchased methamphetamine from Phillips in the vicinity of the same premises in the past.

4(b). Prior to the CS purchase on May 2nd, I searched the CS's person and his/her vehicle for narcotics and other contraband. I found no drugs or other contraband on his/her person or in his/her vehicle. I provided the CS with $10,000 in currency to purchase methamphetamine from Phillips. These funds were provided for this purpose by the Contra Costa County Sheriff's Department which is also participating in this investigation. The CS received instructions from the FBI and Contra Costa Sheriff's Deputies as to how to conduct the transaction.

4(c). At approximately 3:15 p.m. on May 2nd, the CS was surveilled by law enforcement agents as the CS drove from the debriefing location to the Madeline Drive premises. At approximately 3:30 p.m., as the CS was looking for a parking space in front of the premises, Phillips and two other adult males (identities unknown) were observed by surveillance officers standing in front of the premises. The CS told me after the transaction that Phillips made a hand gesture directing her/him to park on the driveway of the premises and to enter the premises with him.

4(d). The CS exited his/her vehicle and followed Phillips into the subject premises. While inside the premises, the CS observed Phillips reach into a shoe box that was already inside the house. Phillips opened the box and took out a clear ziplock bag filled with approximately one pound of a white crystal substance later confirmed by the DEA laboratory to contain methamphetamine. Phillips showed the substance to the CS as the CS handed him the $10,000 in cash. Phillips counted the $10,000 outloud, then wrapped the ziplock bag containing the methamphetamine into a tight package, placed the package into the shoe box, and handed the shoe box to the CS. The CS told me that Phillips placed the $10,000 into another small shoe box.

4(e). After completing the exchange, the CS exited the premises and was surveilled back to the staging area by surveillance officers. At approximately 3:45 p.m., the CS provided myself and other agents with a shoe box containing approximately one pound of crystal methamphetamine. A search of the CS was again conducted and the CS

had no narcotics or other contraband on his/her person.

5. At approximately 4:00 p.m. on May 2nd, after the controlled purchase, the CS received a telephone call from the cell phone number used by Phillips. This incoming telephone call was recorded. Phillips asked the CS if the amount given to him was exactly $10,000 because he felt it was short. The CS confirmed that the amount given to him was exactly $10,000.

6. I have reviewed the audio and video recording of the controlled purchase of methamphetamine from Phillips. The videotape clearly shows the CS arriving in his/her car in the area of the Madeline Drive premises. Several adult males can be seen standing outside the premises. The CS can be seen walking into the house using a side entrance. An adult male, wearing a white T-shirt, can be seen walking in front of the CS toward the same side of the premises. I have compared this adult male in the videotape with a DMV driver's license photograph of Phillips, as well as a booking photograph of Phillips. The adult male in the videotape appears to be Phillips. Once inside the residence, Phillips can be seen on the videotape removing a plastic bag from a VANS shoe box containing a white crystalline substance. In the audio portion, Phillips and the CS can be heard discussing the quality of the methamphetamine in the plastic bag. Thereafter, Phillips can be seen counting the $10,000 given to him by the CS for the methamphetamine. Phillips can be seen collecting the currency in $1,000 bundles and placing the bundles in a box on a coffee table inside the room. After Phillips counted the money, he attempted to place

4

the bundles of U.S. currency inside his pocket. After unsuccessfully attempting to place the currency in his pockets, Phillips retrieved another box from the room to place the bundles of money in. Thereafter, Phillips can be seen escorting the CS outside of the residence. Outside, Phillips can be heard indicating that he can provide the CS with additional methamphetamine. The CS thereafter asked Phillips how much he/she should charge for the methamphetamine. Phillips can be heard telling the CS that methamphetamine is currently selling for 600 an ounce. The CS asked Phillips if the methamphetamine he/she purchased from him was "turnable." Phillips replied, "It's turnable, that's what I do." The CS and Phillips also discussed the quality of the methamphetamine. The CS can be seen leaving the residence.

7. The suspected methamphetamine purchased by the CS from Phillips was submitted to the DEA laboratory for chemical analysis. The DEA laboratory report, dated May 10, 2007, reflects that the substance tested positive for methamphetamine with a gross weight of 467.2 grams, a net weight of 423.2 grams, and purity of 38.4 percent (the amount of actual drug was 162.5 grams, with a reserve weight of 421.7 grams).

8. Based upon the foregoing evidence, there is probable cause to believe that on May 2, 2007, inside the location of 1477 Madeline Drive, the defendant Charles A. Phillips knowingly and intentionally possessed a Schedule II controlled substance, namely approximately 423.2 grams of a substance and mixture containing methamphetamine (162.5 grams of actual methamphetamine), with the intent to distribute it, and that he

distributed this substance in violation of 21 U.S.C. § 841(a)(1).

Moreover, by knowingly using the place of 1477 Madeline Drive in San Pablo for the distribution of methamphetamine on that date, the defendant violated the provisions of 21 U.S.C. § 856(a)(1) prohibiting the use of any place for the purpose of distributing any controlled substance.

9. Accordingly, I request the issuance of the accompanying criminal complaint, charging Charles A. Phillips with the offenses set forth in the Attachment to the complaint.

_____
Nitiana Doss
FBI Special Agent

Subscribed and sworn to before me
on this _17th_ day of August, 2007.

_____
JOSEPH C. SPERO
United States Magistrate Judge